UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Cause No. 1:24-cv-02153 |
| v. | ) | |
| | ) | |
| APPROXIMATELY TWO | ) | |
| TERRIER MIX TYPE DOGS, | ) | |
| | ) | |
| Defendants. | ) | |

## **VERIFIED COMPLAINT FOR FORFEITURE _IN REM_**

The United States of America, by counsel, Zachary A. Myers, United States Attorney for

the Southern District of Indiana, and Kelly Rota, Assistant United States Attorney, files its

Complaint of Forfeiture in Rem pursuant to Supplemental Rules for Admiralty, Maritime and

Asset Forfeiture Claims G(2), and alleges on information and belief as follows:

## **NATURE OF THE CLAIM**

1.      The United States of America (the "United States") has commenced this civil

action, _in rem,_ to enforce the provisions of 7 U.S.C. § 2156(e) seeking the forfeiture of two

terrier mix dogs that were involved in a violation of the animal fighting venture prohibition of

the Animal Welfare Act, 7 U.S.C. § 2156.

2.      The dogs were seized on or about June 28, 2024, by the United States Department

of Agriculture-Office of Inspector General ("USDA-OIG") pursuant to a federal search warrant

executed in the Southern District of Indiana.

3.      As this Complaint is being filed for the purpose of establishing grounds for

forfeiture and providing notice to interested persons, it does not include all the information

1

known by the Government in connection with the ongoing investigation underlying the claims for forfeiture set forth herein.

## DEFENDANTS IN REM

4.     The following items were seized from the residence of Thomas Rayford, 2030 Dewey Street, Anderson, Indiana, 46016, (Asset Identification Number:24-AIG-000025)

- USM-001 Terrier Mix – Black – Male
- USM-002 Terrier Mix – Brindle – Female

    (Defendant Dogs)

5.     The Defendant Dogs are in the custody of the United States Marshals Service and are being cared for by a contractor who is providing the dogs with access to rehabilitation and veterinary services.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1345 (district courts have original jurisdiction of all civil action commenced by the United States) and § 1355 (district courts have original jurisdiction of any action for forfeiture).

7.     This Court has *in rem* jurisdiction over the Defendant Dogs pursuant to 28 U.S.C. § 1355(b) (forfeiture can be brought in a district in which any of the acts giving rise to the forfeiture occurred), and Rule G(3)(b)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (clerk must issue a warrant to arrest property in the government's possession).

8.     This Court is the appropriate venue in this matter pursuant to 21 U.S.C § 888(j) and 28 U.S.C. § 1395, because acts and omissions giving rise to the forfeiture occurred in the Southern District of Indiana.

**BASIS FOR FORFEITURE**

9.      The Animal Welfare Act, 7 U.S.C. § 2156(f)(1), defines "animal fighting venture" as "any event, in or affecting interstate or foreign commerce, that involves a fight conducted or to be conducted between at least 2 animals for purposes of sport, wagering, or entertainment." It is a violation of 7 U.S.C. § 2156 to "knowingly sell, buy, possess, train, transport, deliver, or receive any animal for purposes of having the animal participate in an animal fighting venture."

10.      The Animal Welfare Act provides that "[a] warrant to search for and seize any animal which there is probable cause to believe was involved in any violation of this section may be issued by any judge of the United States or of a State court of record or by a United States magistrate judge within the district wherein the animal sought is located." 7 U.S.C. § 2156(e). Animals "seized under such a warrant shall be held by the United States marshal or other authorized person pending disposition thereof by the court in accordance with this subsection." *Id.* In addition, "[n]ecessary care including veterinary treatment shall be provided while the animals are so held in custody." *Id.*

11.      The Animal Welfare Act provides that "[a] warrant to search for and seize any animal which there is probable cause to believe was involved in any violation of this section may be issued by any judge of the United States or of a State court of record or by a United States magistrate judge within the district wherein the animal sought is located." 7 U.S.C. § 2156(e). Animals "seized under such a warrant shall be held by the United States marshal or other authorized person pending disposition thereof by the court in accordance with this subsection." *Id.* In addition, "[n]ecessary care including veterinary treatment shall be provided while the animals are so held in custody." *Id.*

12.    The statute also contemplates forfeiture of seized animals. Specifically,

[a]ny animal involved in any violation of this section shall be liable to be proceeded against and forfeited to the United States at any time on complaint filed in any United States district court or other court of the United States for any jurisdiction in which the animal is found and upon a judgment of forfeiture shall be disposed of by sale for lawful purposes or by other humane means, as the court may direct. *Id.*

The costs incurred in caring for animals seized and forfeited under this section "shall be recoverable from the owner of the animals (1) if he appears in such forfeiture proceeding, or (2) in a separate civil action brought in the jurisdiction in which the owner is found or transacts business." *Id.*

13.    As explained below, the Defendant Dogs are animals involved in a violation of 7 U.S.C. § 2156, and are, therefore, subject to forfeiture to the United States of America pursuant to 7 U.S.C. § 2156(e).

## **BACKGROUND**

14.    Dog fighting is a violent contest in which two dogs that are bred and conditioned for fighting are released by their owners or handlers in a controlled environment to attack each other and fight for purposes of entertainment or gambling. Fights usually ends when one dog withdraws, when a handler "picks up" his dog and forfeits the match, or when one or both dogs die.

15.    Terrier mix or pit-bull type dogs are the most common type of dogs used in dog fighting ventures. This is due to their short coats, compact muscular builds, and aggressive temperaments that some exhibit toward other dogs.

16.    Dog fighters select the strongest, most capable fighting dogs and selectively breed, sell, and fight those dogs that display traits. It is a common practice for individuals

4

involved in the breeding, raising, conditioning, and exhibition of fighting dogs to possess multiple dogs of both sexes and of a variety of ages. This practice is followed for several reasons. First, dog fighters maintain a stock of dogs at different weights and both sexes because, in dogfights, dogs are matched against other dogs by an agreed upon weight and by the same sex. Maintaining a stock of several dogs, therefore, increases the odds of owning a dog of the required sex that can be readily conditioned to the agreed upon weight for a contracted match. Additionally, dog fighters maintain multiple dogs to selectively breed, sell, and fight dogs displaying certain traits or to otherwise advance a particular dogfighting "bloodline."

17.    Some of these traits are: (1) "gameness" or aggressiveness and propensity to fight other dogs; (2) a willingness to continue fighting another dog despite traumatic and/or mortal injury; and (3) cardiovascular endurance to continue fighting for long periods of time and through fatigue and injury.

18.    Dog fighters fight dogs with a goal of obtaining "Champion" or "Grand Champion" status for their dogs, which is achieved by winning three or five fights, respectively.

19.    Dog fighters can generate substantial income from gambling on dog fights and from the sale and breeding of animals with a fighting lineage.

20.    Once a dog fighter locates an opponent and agrees upon terms, the match is "hooked," or set up.

21.    The dog then undergoes a conditioning process dog handlers refer to as a "keep."

22.    A "keep" is typically conducted for six to eight weeks before the scheduled match and involves a training program including: treadmills used to run and exercise the dogs away from public view; weight pulls used to increase the dog's strength and stamina; the use of

5

devices such as "spring poles" and "flirt poles" to build jaw strength and increase aggression; and the administration of drugs, vitamins, and other medicine.

23.     Dog fighters typically do not start setting up matches for a dog until the dog reaches at least 18 months of age. Until then, dog fighters may test the dog out by "rolling" it or having the dog participate in short fights to assess the dog's demeanor. Thus, it is common for dog fighters to possess young dogs that are in the process of being trained to fight and, consequently, do not yet have much, if any, scarring.

24.     It is common practice for those involved in training and fighting dogs to possess several dogs at one time. This practice is followed for several reasons. First, dog fighters generally maintain a stock of dogs at different weights and both sexes because, in dog fights, dogs are matched against other dogs to within a pound of the same weight against dogs of the same sex. Maintaining a stock of several dogs thus increases the odds of owning a dog whose weight meets the requirements for a match being solicited by an opponent. Second, dog fighters also generally maintain multiple dogs to selectively breed, sell, and fight dogs displaying certain traits or to otherwise advance a particular dog fighting bloodline.

25.     Further, dog fighters must possess an inventory of dogs because dogs often die or are badly injured during fights. Dogs that lose fights or fail to show "gameness" are often killed. It is not uncommon for dogs that lose matches to be killed in cruel, torturous, and inhumane ways as punishment.

26.     Because of their conditioning and training, dogs used in animal fighting ventures are almost always housed separately from other dogs—in pens, cages, or on chains—so that they will not hurt or kill other dogs when the handler is absent. Heavy chains are often used when

6

restraining dogs outdoors to develop neck strength in dogs used for fighting purposes.

27.    It is common for dog fighters to possess dog fighting paraphernalia used to exercise, train, restrain, and strengthen or condition their dogs, including:

     a.    Weighted collars, chains, and weight scales;

     b.    "Spring poles"—ropes that dangle animal hides or "lures" that, when gripped by a dog's mouth, result in the dog being suspended partly or entirely off the ground. Spring poles are commonly used by dog fighters to strengthen and condition a dog's jaw and neck muscles to achieve a better "bite";

     c.    "Flirt poles"—long poles with a hide or fur lure attached that is moved by a trainer to tease a dog; and

     d.    "Break sticks"—sticks of wood, plastic, fiberglass, resin, or other material that are used to pry open the jaws of dogs during a dog fight.

28.    Dog fighters often attempt to mend the injuries of their dogs rather than seek veterinary attention, which would raise suspicion regarding the cause of injuries. Thus, it is common to find veterinary supplies, including animal medication or supplements (which don't require a prescription), where dogs involved in dog fighting are being kept.

29.    Dogfighters communicate via social media (e.g., Facebook Messenger), cell phone, Telegram, email, text messages, or website chat rooms dedicated to "game dogs." Dogfighters routinely schedule matches and exchange documents, tips, photographs, or videos relating to dog fighting activities via electronic means. They exchange videos, for example, to demonstrate the strength and gameness of their dogs, thus increasing the value of their dogs.

30.    It is a common practice for individuals involved in the breeding, raising, conditioning, and exhibition of fighting dogs to possess multiple dogs of both sexes and of a variety of ages. This practice is followed for several reasons. First, dogfighters maintain a stock of dogs at different weights and both sexes because, in dogfights, dogs are matched against other

7

dogs to an agreed upon weight against dogs of the same sex. Maintaining a stock of several dogs thus increases the odds of owning a dog of the required sex that can be readily conditioned to the agreed upon weight for a contracted match. Second, dogfighters also maintain multiple dogs to selectively breed, sell, and fight dogs displaying certain traits or to otherwise advance a particular dogfighting "bloodline."

## **FACTS**

31.    As part of an ongoing investigation into illegal dog fighting in the Southern District of Indiana and elsewhere, special agents of the FBI and the USDA-OIG, working with the U.S. Attorney's Office for the Southern District of Indiana, identified several individuals in Indiana believed to be participating in an interstate network of dog fighters.

32.    On June 24. 2024, Magistrate Judge Mario Garcia, upon the United States' application, issued federal search warrant 1:24-mj-0582-MG, for 2030 Dewey Street, Anderson, Indiana, in the Southern District of Indiana. The warrant authorized the United States to search for and seize animals, among other things, based on probable cause that the animals were involved in violation of 7 U.S.C. § 2156 and 18 U.S.C. § 371.

33.    On June 28, 2024, the warrant was executed by the FBI and USDA-OIG with the assistance of other law enforcement officers.

34.    The Defendant Dogs were two terrier mix type dogs.

35.    The Defendant Dogs were seized from 2030 Dewey Street, Anderson, Indiana 46016, the residence of Elizabeth Goodson ("Goodson") and Thomas Rayford ("Rayford"). At time of seizure, the Defendant Dogs were located in a one dirty crate with no food or water. ((Attachments1 through 3, Photos of dogs.)

36.    As part of the search, law enforcement also located and seized horse aspirin and multi-species prebiotics and probiotics, which were located under the sink in the kitchen. (Attachment 4, Photos of animal medicine and supplements.)

37.    Law enforcement also located paraphernalia common for dog fighters to possess at residence. (Attachment 5, 2 pages, Dog fighting paraphrenalia.)

38.    The investigation revealed that Goodson and Rayford had other dogs removed from their residence less than a year before the seizure.

39.    On October 31, 2023, the Anderson, Indiana, Police Department and Anderson Animal Control Services seized 10 dogs from the Dewey Street residence. As the dogs were being transported from the residence to an animal shelter, four of the dogs broke loose from their compartments and fought. Two dogs received fatal injuries during these fights.

40.    USDA-OIG reviewed a report authored by Doctor Melissa Justice, DVM, from the Indiana Board of Animal Health, who examined the dogs seized from Rayford and Goodson. Dr. Justice found pre-existing injuries on multiple dogs consistent with dogs that are used for fighting. Dr. Justice also found that the dogs' wounds appeared to be in various stages of healing, indicated that they were inflicted at different times and again consistent with these animals being engaged in fighting for a period of time.

41.    Following the October 31, 202 seizure, Anderson Police Department obtained a warrant to search the contents of Rayford's Facebook account, "TadaRayford." This Facebook account was registered to Rayford at the Dewey Street residence in Anderson, Indiana.

42.    A review of Rayford's Facebook account revealed extensive conversations between Rayford, Goodson, and others about dogfighting. For example, on or about July 3, 2023,

Rayford sent Goodson a video of Rayford's dog fighting another dog. In the Facebook message, Rayford informed Goodson that the fight occurred on July 2019, and was "Gretta's" first fight.

43.    The Facebook account also revealed that Rayford sent the same video to Robert Hamer ("Hamer")[1] on July 3, 2023. Rayford told Hamer that the video depicted, "Gretta on her first roll." As set forth above, "roll" is a term for a dogfight conducted for purposes of "game-testing" rather than for wagering (that is, a fight to determine whether a given dog would be a good fighter and would be a dog the owner/handler would want to enter in a contracted match).

44.    On April 22, 2023, a third party sent a message to Rayford on Facebook inquiring about the costs of his dogs. Rayford responded, "Lol these aint [sic] bred for normal ppl [people] thy [they] don't ply [play] well with other animals."

45.    On July 10, 2024, Rayford was indicted by a federal grand jury on charges of Conspiracy to Engage in an Animal Fighting Venture, in violation of 7 U.S.C. § 2156 and 18 U.S.C. § 371 (Count 1) and Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1) (Count 2). *United States of America v. Rayford 1:24-cr-00132-JRS-KMB*. Rayford is currently set for trial on March 31, 2025.

46.    On June 5, 2024, Goodson was indicted by a federal grand jury on charges of perjury, stemming from her grand jury testimony in RAYFORD's case. *United States of America v. Goodson 1:24-cr-00103-JRS-MJD*. According to the indictment, Goodson lied about her knowledge of the dogs that were kept at the Dewey residence being used for dogfighting and lied about how one of the dogs sustained significant damage to its muzzle. Goodson has signed a

---

[1] Hamer was charged with 16 other defendants in a Superseding Indictment alleging a conspiracy to engage in an animal fighting venture in violation of Title 7 U.S.C. § 2156 and 18 U.S.C. § 371 in the Southern District of Indiana. Hamer also is charged with multiple counts of dogfighting, in violation of Title 7 U.S.C. § 2156, *1:23-cr-00123-JRS-MG, United States v. De Leon, et al.*

Petition to Enter Plea of Guilty and Plea Agreement, filed on November 13th, 2024, agreeing to plead guilty to one count of Perjury.

47.     There is reason to believe that the Defendant Dogs are subject to forfeiture under 7 U.S.C. § 2156(f) which states that "…Any animal involved in any violation of this section shall be liable to be proceeded against and forfeited to the United States at any time on complaint filed in any United States district court …… and upon judgment of forfeiture shall be **disposed of by sale for lawful purposes or by other humane means, as the court may direct**." (Emphasis added)

## <u>REQUEST FOR RELIEF</u>

The United States of America respectfully requests that process of a Warrant for Arrest and Notice *in Rem* be issued for the arrest of the Defendant Dogs *in rem*, that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the Defendant Dogs *in rem* be forfeited to the United States for disposition according to law; that the court enter a judgment for costs associated with the care of the Defendant Dogs *in rem* pursuant to 7 U.S.C. § 2156(e) should any interested party file a claim for the Defendant Dogs in rem; and the United States of America be granted such other relief as this Court my deem just and proper.

DATED this 5th day of December 2024.


Respectfully submitted,

ZACHARY A. MYERS
United States Attorney

11

By:    *s/ Kelly Rota*_____
        Kelly Rota
        Assistant United States Attorney
        Office of the United States Attorney
        10 W. Market St., Suite 2100
        Indianapolis, Indiana 46204-3048
        Telephone: (317) 226-6333
        Fax: (317) 226-5027
        Kelly.rota@usdoj.dog

12

## <u>VERIFICATION</u>

I, Justin Adams, hereby verify and declare under penalty of perjury that I am a Special Agent with the United States Department of Agriculture-Office of Inspector General ("USDA-OIG"), that I have read the foregoing Complaint for Forfeiture *in rem* and know the contents thereof, and the matters contained in the Complaint are true to my own knowledge, except that those matters herein stated to be alleged on information and belief, and as to those matters I believe to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement offices, as well as my investigation of this case, together with others, as a Special Agent with USDA-OIG.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated: __12/5/2024__          /s/ _____
                              Justin Adams
                              Special Agent
                              U.S. Department of Agriculture-OIG